# Applicability of the Antideficiency Act Apportionment Requirements to the Nonadministrative Funds of the Federal Savings and Loan Insurance Corporation

The plain language and legislative history of the apportionment requirements in the Antideficiency Act, 31 U.S.C. §§ 1511–1519, make clear that Congress intended all funds, including nonadministrative funds, of government corporations such as the FSLIC to be subject to apportionment.

The provision in 12 U.S.C. § 1725(c)(5) that the FSLIC shall determine its necessary expenditures "without regard to the provisions of any other law governing the expenditures of public funds," does not specifically exempt FSLIC funds from the apportionment requirements of the Antideficiency Act.

February 18, 1983

MEMORANDUM OPINION FOR THE COUNSEL TO THE DIRECTOR,
OFFICE OF MANAGEMENT AND BUDGET

Your opinion request raises the issue whether the nonadministrative funds of the Federal Savings and Loan Insurance Corporation (FSLIC) are subject to the apportionment requirements of the Antideficiency Act, as recently amended. 31 U.S.C. §§ 1511–1519 (1982). Notwithstanding a General Accounting Office (GAO) opinion that concluded that the Antideficiency Act applies to such FSLIC funds, 43 Comp. Gen. 759 (1964), the Federal Home Loan Bank Board (FHLBB) apparently asserts that the Office of Management and Budget (OMB) has no authority to apportion nonadministrative funds of the FSLIC.[1] Based upon our independent examination of the language and legislative history of the Antideficiency Act, we conclude that Congress intended the apportionment requirements of the Antideficiency Act to apply to the nonadministrative funds of wholly or partly owned government corporations such as the FSLIC.

## I. Background

### A. The FSLIC and its Organic Statute

The National Housing Act, Act of July 27, 1934, ch. 847, Title IV, 48 Stat. 1256, (codified as amended at 12 U.S.C. §§ 1725 et seq.), created the FSLIC to

---

[1] In the 1982 codification, the word "President" is substituted for "Director of the Office of Management and Budget," "Office of Management and Budget," and "Director," because §§ 101 and 102(a) of Reorganization Plan No. 2 of 1970, 84 Stat. 2085, designated the Bureau of the Budget as the Office of Management and Budget and transferred all functions of the Bureau to the President. See H.R. Rep. No. 651, 97th Cong., 2d Sess. 75 (1982).

insure the accounts of certain eligible institutions, particularly federal savings and loan associations.[2] 12 U.S.C. § 1725(a). Congress intended the insurance of accounts in such savings and loan associations to protect the small savers in these institutions and to encourage a flow of money into the institutions, thereby providing more adequate capital for the long-term financing of homes. *See* 79 Cong. Rec. 5430 (1935) (remarks of Sen. Buckley). FSLIC funds are derived from assessments imposed by the FSLIC on the institutions it insures. The FSLIC prescribes a premium for insurance equal to a specified percentage of the total amount of all accounts of insured members of the institution. 12 U.S.C. § 1727(b)(1). It may also assess additional premiums for insurance to cover any FSLIC losses and expenses. *Id.* § 1727(c). In turn, each institution insured by the FSLIC is entitled to insurance up to the full withdrawal or repurchasable value of the accounts of its members and investors holding shares, investment certificates, or deposits, except that no member or investor, with certain exceptions, shall be insured for an aggregate amount in excess of $100,000. *Id.* § 1728(a).

In the event of a default by an insured institution, the FSLIC must make payment of each surrendered insured account in that institution either by cash or provision of an equivalent, transferred account in another insured institution. 12 U.S.C. § 1728(b). However, in order to prevent a default in an insured institution, the FSLIC is authorized, in its discretion, to make loans or contributions to, or to purchase the assets of, an insured institution. *Id.* § 1729(f)(1). Further, whenever an insured institution is in danger of default, the FSLIC may purchase assets, assume liabilities, or make loans or guarantees to facilitate a merger or consolidation of the endangered institution with another insured institution. *Id.* § 1729(f)(2).

The National Housing Act also provides that the FSLIC "shall determine its necessary expenditures under this chapter and the manner in which the same shall be incurred, allowed, and paid, without regard to the provisions of any other law governing the expenditures of public funds." 12 U.S.C. § 1725(c)(5).[3] The FHLBB primarily bases its argument that FSLIC nonadministrative funds are not subject to apportionment requirements on this provision in the FSLIC enabling statute. At the outset, we note only that the term "necessary expenditures" in § 1725(c)(5) makes no between administrative and nonadministrative expenses.

## B. *The Antideficiency Act*

In 1870, Congress enacted a statutory prohibition against Executive departments or agencies incurring obligations in excess of appropriations or involv-

---

[2] The FSLIC is required to insure the accounts of all Federal savings and loan associations and Federal mutual savings banks. It may insure the accounts of building and loan, savings and loan, and homestead associations and cooperative banks organized and operated according to the laws of the State, District, Territory, or possession in which they are chartered or organized. 12 U S.C. § 1726(a).

[3] This provision was added to Title IV of the National Housing Act by § 22 of the Act of May 28, 1935, 49 Stat. 298 (1935).

23

ing the United States in any contract or obligation for the payment of money in excess of appropriations unless authorized by law. *See* Act of July 12, 1870, 16 Stat. 230, 251. Since then, Congress has amended this statutory prohibition, referred to as the Antideficiency Act, seven times.[4] While reenacting the original prohibition against incurring obligations in excess of appropriations in substantially the same language, Congress attempted, with each amendment, to prohibit deficiency spending more effectively by requiring with increasing stringency that agencies apportion their spending throughout the fiscal year. The apportionment requirement first appeared when the Antideficiency Act was amended in 1905. *See* Act of Mar. 3, 1905, ch. 1484, § 4, 33 Stat. 1257. From 1905 to 1950, Congress authorized the heads of agencies to waive apportionments administratively in the event of an "extraordinary emergency."[5] Currently, an executive agency head may request, but only the President (or an official having administrative control of an appropriation available to the legislative or judicial branch) may make, an apportionment that would indicate a necessity for a deficiency or supplemental appropriation because of an emergency expenditure. 31 U.S.C. § 1515(b) (1982).

Moreover, in amending the Antideficiency Act, Congress brought increasing types and kinds of appropriations within the scope of the Act: no year (indefinite) appropriations as well as annual (definite) appropriations; corporate funds (which may come from receipts, assessments, user fees) as well as the customary fiscal year appropriations that Congress makes permitting agencies to make payments out of Treasury monies. *Compare* R.S. § 3679, 31 U.S.C. § 665 (1946) *with* 31 U.S.C. § 1511 (1982).[6] As recently codified and enacted, the Antideficiency Act provides that:

> (a) (1) An officer or employee of the United States Government or of the District of Columbia government may not
> (A) make or authorize an expenditure or obligation exceeding an amount available in an appropriation or fund for the expenditure or obligation; or
> (B) involve either government in a contract or obligation for the payment of money before an appropriation is made unless authorized by law.

---

[4] Act of Mar. 3, 1905, ch. 1484, § 4, 33 Stat. 1257; Act of Feb. 27, 1906, ch. 510, § 3, 34 Stat. 48; Act of Sept. 6, 1950, ch. 896, § 1211, 64 Stat. 765; Pub. L. No. 85-170, § 1401, 71 Stat. 440 (1957), Pub. L No. 93198, § 421, 87 Stat. 789 (1973); Pub. L. No. 93-344, § 1002, 88 Stat. 332 (1974); Pub. L. No. 93-618, § 175(a)(2), 88 Stat. 2011 (1975).

[5] Prior to 1950, apportionments could be waived or modified by an executive department head "upon the happening of some extraordinary emergency or unusual circumstance which could not be anticipated at the time of making such apportionment." R.S. § 3679; Act of Mar. 3, 1905, ch. 1484, § 4, 33 Stat. 1257; Act of Feb. 27, 1906, ch. 510, § 3, 34 Stat. 48.

As of 1933, however, § 16 of Executive Order No. 6166 (June 10, 1933) transferred the functions of "making, waiving, and modifying apportionments of appropriations" to the Director of the Bureau of the Budget.

[6] *See also* 96 Cong. Rec. 6725-31, 6835-37 (1950) (legislative debate).

31 U.S.C. § 1341(a)(1). Further,

> (a) Except as provided in this subchapter, an appropriation available for obligation for a definite period shall be apportioned to prevent obligation or expenditure at a rate that would indicate a necessity for a deficiency or supplemental appropriation for the period. An appropriation for an indefinite period and authority to make obligations by contract before appropriations shall be apportioned to achieve the most effective and economical use. An apportionment may be reapportioned under this section.

*Id.* § 1512(a).

## C. The Present Dispute

As we understand the facts, the FHLBB recently took action to avert the failures of three financially troubled savings and loan associations by effecting an FSLIC-assisted merger. *See* 12 U.S.C. § 1729(f)(2). This action caused the FSLIC, which operates under the direction of the FHLBB, *see* 12 U.S.C. § 1725(a), to exceed by $2.8 million the amount OMB had apportioned to provide for the "Purchase of Income Capital Certificates," a fund line item. Under the Antideficiency Act, if an officer or employee of an executive agency authorizes an expenditure exceeding an apportionment, the head of the executive agency must report immediately to the President and Congress all relevant facts and a statement of actions taken. 31 U.S.C. § 1517(b). Because the General Counsel of the FHLBB believes that FSLIC nonadministrative expenses are not subject to apportionment under the Antideficiency Act, however, the FHLBB informed OMB that no report of the transaction would be submitted.[7] To avoid recurring disagreements regarding the potential overobligation of FSLIC funds, OMB then requested this Office to determine whether OMB, on behalf of the President, has authority to apportion FSLIC nonadministrative funds pursuant to the Antideficiency Act.

## II. Analysis

We are confronted with conflicting statutory provisions and our task is to determine how Congress intended these facially inconsistent statutes to function. The FSLIC's organic statute states that the FSLIC shall determine how its

---

[7] We attempt no definitive categorization of administrative and nonadministrative expenses. The FHLBB roughly defines administrative expenses as those expenses for which estimates are submitted to support an annual appropriation for the FSLIC pursuant to the Government Corporation Control Act, Act of Dec. 6, 1945, ch. 557, § 2, 59 Stat. 597 (codified as amended at 31 U.S.C. §§ 9101, 9104). The FSLIC believes administrative expenses exclude "interest paid, depreciation, properly capitalized expenditures, expenses in connection with liquidation of insured institutions, . . . liquidations, payment of insurance, and action for or toward the avoidance, termination, or minimizing of losses in the case of insured institutions, legal fees and expenses."

25

necessary expenses are to be incurred, allowed and paid, "without regard to the provisions of any other law governing the expenditures of public funds." 12 U.S.C. § 1725(c)(5). The Antideficiency Act with equal clarity provides that the President and OMB are to exercise apportionment authority over all appropriations or funds available to the Executive Branch, regardless of whether the funds are available for obligations for a definite or indefinite period. *See* 31 U.S.C. §§ 1511–1513. We proceed first to examine the provision exempting the FSLIC from the application of other fiscal statutes and then to analyze the pertinent Antideficiency Act amendments enacted in 1950. We conclude that these specifically crafted, later-enacted amendments were intended to supersede, to the extent any inconsistencies exist, the earlier, generally worded FSLIC exempting provision.

### A. FSLIC Exemption from Government Control Over Its Funds

In 1935, one year after the FSLIC was established under the National Housing Act, Congress revisited and amended the Federal Home Loan Bank Act, the Home Owners' Loan Act of 1933 and the National Housing Act in order to provide additional home mortgage relief. *See* S. Rep. No. 438, 74th Cong., 1st Sess. 1 (1935); 79 Cong. Rec. 7851–55 (1935) (House Conference Report). With respect to the FSLIC, Congress primarily intended the statutory amendments to reduce the cost of insurance of the accounts of savers and investors in savings and loan associations, thus encouraging the use of such insurance and stimulating the confidence of the public in home financing institutions. *See* S. Rep. No. 438, 74th Cong., 1st Sess. 2 (1935). Congress at this time also added § 1725(c)(5), which authorizes the FSLIC to determine its necessary expenditures and the manner in which they shall be incurred and paid "without regard to the provisions of any other law governing the expenditure of public funds." *See* Act of May 28, 1935, ch. 150, § 22, 49 Stat. 298. Although many of the 1935 amendments were hotly debated, the legislative history pertinent to the amendment of 12 U.S.C. § 1725(c)(5) is sparse.[8]

Initially, when H.R. 6021, which as amended became the 1935 Act, was reported to the full House, it contained a section that gave the FSLIC free use of the United States mails and the right to determine its expenditures and assessments "without use of the usual appropriation and routine." 79 Cong. Rec. 3154 (1935) (remarks of Rep. Hancock) (describing § 16 of proposed bill). As then explained, "this is necessary as this Corporation collects insurance premiums and must be in position to pay losses and other expenses, which cannot be budgeted or anticipated in advance." *Id.* In the course of the House debate, however, the portion of this proposed section exempting the FSLIC from any legal limitations on the expenditure of public funds was deleted. Representative Williams offered the following explanation for his amendment to strike: "It simply places the accounts of the FSLIC, in accordance with the Executive Order of the President, as I understand it on exactly the same basis as all other

---

[8] *See* 79 Cong. Rec. 3121–36, 3137–68, 3239–73, 3289–316, 347080, 5418–46, 5489–507 (1935).

corporations, namely, that they shall submit their expenditure accounts to the General Accounting Office for audit." 79 Cong. Rec. 3308 (1935) (remarks of Rep. Williams).[9]

When the Senate Committee on Banking and Currency reported H.R. 6021 with amendments to the full Senate, the provision authorizing the FSLIC to determine its necessary expenditures "without regard to the provisions of any other law governing the expenditure of public funds" reappeared. *See* 79 Cong. Rec. 5420 (1935) (remarks of Sen. Buckley). No explanation of the provision was offered, however, *see id.* at 5420–21 (1935) (remarks of Sen. Buckley), and the Senate Report is noticeably silent with respect to the congressional intent regarding this provision. *See* S. Rep. No. 438, 74th Cong., 1st Sess. 5 (1935). We are reluctant to attribute any specific intent to Congress in the face of such unilluminating evidence. *See County of Washington* v. *Gunther*, 452 U.S. 161, 172 & n.12, 176 (1981). The Senate amendment may have reflected the same concern expressed earlier in the House: the difficulty of controlling unanticipated expenses in advance. More probably, the absence of any debate or explanation suggests that Congress regarded the provision as more of a customary, general exemption for corporations than a critical statutory protection specifically designed for the FSLIC's peculiar needs.[10] At that time, after all, the Government Corporation Control Act, Act of Dec. 6, 1945, ch. 557, 59 Stat. 597 (codified at 31 U.S.C. §§ 9101 *et seq.*), was not yet in existence and, as will be explained below, the Antideficiency Act did not apply to the indefinite or revolving funds of government corporations. *See Oliphant* v. *Suquamish Indian Tribe*, 435 U.S 191, 206 (1978) (legislation and treaties to be read in light of common notions of the day and the assumptions of those who drafted them).

## B. The Antideficiency Act Provisions

### 1. Statutory Language

The Antideficiency Act provisions, previously set forth at 31 U.S.C. § 665 (1976), were recently revised, codified and enacted without substantive change. *See* Pub. L. No. 97–258, 96 Stat. 877, 923–24, 92832 (1982) (codified at 31

---

[9] *See* Exec. Order No. 7126 (Aug. 5, 1935)

[10] Enabling statutes for other corporations often have comparable provisions. For example, the Saint Lawrence Seaway Corporation has statutory authority to "determine the character of and the necessity for its obligations and expenditures, and the manner in which they shall be incurred, allowed and paid, subject to provisions of law specifically applicable to Government corporations." 33 U.S.C. § 984(a)(9). The Comptroller General somewhat ambiguously has held that funds available to the Corporation which are derived from user fees are appropriated funds (and therefore presumably subject to the Antideficiency Act), but that the Corporation is not subject to all restrictions governing the use of appropriated funds by noncorporate federal entities. While failing to draw a line between the areas in which Congress had and had not retained control of corporation expenditures, the Comptroller General suggested that the corporation would be exempt at least from statutory restrictions on the expenditure of appropriated funds for the lodging and feeding of nongovernment employees at conventions. *See* 31 U.S.C. § 1345 (excepting agencies from travel expenses prohibition); Comp. Gen. Op. B-193573 (Dec. 19, 1979) (unpublished opinion).

27

U.S.C. §§ 1341–1342, 1511–1519); H.R. Rep. No. 651, 97th Cong., 2d Sess. 1, 3 (1982) ("bill makes no substantive change in law"). The apportionment requirements, 31 U.S.C. §§ 1511–1519, apply to all appropriations which fall within the following broad definition: (1) appropriated amounts; (2) funds; and (3) authority to make obligations by contract before appropriations. *Id.* § 1511(a). The statutory apportionment requirements do not apply to three narrow categories: (1) funds for price support and surplus removal of agricultural commodities, including funds (under 7 U.S.C. § 612c) to encourage exportation and domestic consumption of agricultural products; (2) corporations getting amounts to make loans (except paid in capital amounts) without legal liability on the part of the United States Government; and (3) the Senate, the House of Representatives, a committee of Congress, or an officer or employee of either House. *See* 31 U.S.C. § 1511(b).

For several reasons, the statute on its face indicates that FSLIC funds fall within the scope of the apportionment requirements. Prior to 1950, the Antideficiency Act did not subject indefinite or permanent appropriations, which included the nonadministrative funds of government corporations, to apportionment. Rather,

> all appropriations made for contingent expenses or other general purposes, *except appropriations made in fulfillment of contract obligations expressly authorized by law, or for objects required or authorized by law without reference to the amounts annually appropriated therefor*, shall, on or before the beginning of each fiscal year, be so apportioned by monthly or other allotments as to prevent expenditures in one portion of the year which may necessitate deficiency or additional appropriations to complete the service of the fiscal year for which said appropriations are made. . . .

R.S. § 3679 (codified as amended at 31 U.S.C. § 665 (1946)) (emphasis added). The 1950 amendments considerably expanded the types of funds subject to apportionment so as to provide:

> Except as otherwise provided in this section, *all appropriations or funds* available for obligation for a definite period of time shall be so apportioned as to prevent obligation or expenditure thereof in a manner which would indicate a necessity for deficiency or supplemental appropriations for such period; and *all appropriations or funds not limited to a definite period of time*, and all authorizations to create obligations by contract in advance of appropriations, shall be so apportioned as to achieve the most effective and economical use thereof.

Act of Sept. 6, 1950, ch. 896, 64 Stat. 765 (codified at 31 U.S.C. § 665(c)(1) (1976)) (emphasis added). Apportionment no longer was limited to Congress'

28

*annual* appropriations; instead, all *appropriations or funds* were to be apportioned. Congress further indicated that the agency appropriations requiring apportionment were to include FSLIC funds by specifying that

> When used in this section, the term 'agency' means any executive department, agency, commission, authority, administration, board, or other independent establishment in the executive branch of the Government, *including any corporation wholly or partly owned by the United States which is an instrumentality of the United States.* . . .

31 U.S.C. § 665(d)(2) (1976) (emphasis added).[11] If these 1950 statutory changes meant anything, they were clearly intended to bring funds other than annual appropriations, such as the FSLIC funds from assessments (regardless of whether they are defined as revolving or trust funds) within the scope of the apportionment requirements.[12] Importantly, these 1950 amendments, with only minor subsequent changes, provide the substance for the 1982 codification and enactment.

Another 1950 statutory change, which permitted designated officers to exempt certain trust funds, working funds, working capital funds and revolving funds from apportionment, further supports the position that such funds are subject, as a general rule, to the Antideficiency Act apportionment provisions. 31 U.S.C. § 665(f) (1976).[13] Were trust funds and revolving funds not included

---

[11] One superficial difference between the 1982 enactment of Title 31 and the earlier codification is the deletion of this definition of agency In its place, the general definitions included in Title 31 provide that agency "means a department, agency, or instrumentality of the United States Government," 31 U S C. § 101 (1982), and executive agency "means a department, agency, or instrumentality in the executive branch of the United States Government." *Id.* § 102. The apportionment requirements are exercised (1) by officials having control of appropriations available to the legislative branch, the judicial branch, the United States International Trade Commission, or the District of Columbia government, or (2) by the President if an executive agency is involved. Because the FSLIC does not belong to the legislative or judicial branches it must be an executive agency for purposes of 31 U S C. § 1513 (1982), even though the definition of executive agency no longer specifically includes wholly owned government corporations, as the earlier version did. *Cf.* 31 U.S.C. § 665(d)(2) (1976). Clearly, Congress intended government corporations to be covered by the Act, because the Act contains a provision that such corporations which make loans without legal liability on the part of the United States are specifically exempted. *See* 31 U.S.C. § 1511(b)(2) (1982)

[12] Although the FSLIC refers to its nonadministrative funds as "trust revolving funds" and OMB defines such funds as "public enterprise revolving funds," resolution of this disagreement is not necessary for disposition of the issue we are addressing.

[13] After the 1950 amendments, 31 U.S.C. § 665(f)(1) read:
> The officers designated in subsection (d) of this section to make apportionments and reapportionments may exempt from apportionments trust funds and working funds expenditures from which have [sic] no significant effect on the financial operations of the Government, working capital and revolving funds established for intragovernmental operations, receipts from industrial and power operations available under law . .

As codified and enacted in 1982, the equivalent provision, 31 U.S.C. § 1516, states:
> An official designated in section 1513 of this title to make apportionments may exempt from apportionment
>
> (1) a trust fund or working fund if an expenditure from the fund has no significant effect on the financial operations of the United States Government;
>
> (2) a working capital fund or a revolving fund established for intragovernmental operations; [or]
>
> (3) receipts from industrial and power operations available under law; . . . .

29

initially within the scope of the Act, it would not be necessary to make special provision for their exemption.

Finally, the FSLIC does not fit within any of the narrowly defined exceptions, specified in 1950 and preserved unchanged in the 1982 codification, from the Antideficiency Act's coverage. *Compare* Act of Sept. 6, 1950, 64 Stat. 765 (codified at 31 U.S.C. § 665(d)(2) (1976)) *with* 31 U.S.C. § 1511(b) (1982). Unlike Federal Home Loan Banks, which fall within the definition of excepted corporations because they obtain funds for making loans without legal liability on the part of the United States, *see* 31 U.S.C. § 1511(b)(2), the FSLIC apparently is not a lending institution whose operations are without liability on the part of the United States.[14] *See FSLIC* v. *Quinn*, 419 F.2d 1014 (7th Cir. 1969) (FSLIC acting as instrumentality of United States may assert defense of sovereign immunity to extent that United States could); *see also* 12 U.S.C. §§ 1725(c)(4), 1728(c).

Thus, relying solely on the plain language of the statute, we would conclude that FSLIC funds, whether administrative or nonadministrative, are subject to apportionment.

### 2. Legislative History

Examination of the legislative history buttresses the conclusion we have reached in reliance on the plain language of the statute. Indeed, the legislative history clearly illustrates that an important objective of the 1950 revisions was to subject all funds of government corporations to apportionment. Moreover, because the 1950 amendments constitute the modern version of the Antideficiency Act, with subsequent amendments making only minor changes, the legislative history regarding these statutory changes carries particular weight.[15] Representative Norrell, a sponsor of the 1950 Antideficiency Act amendments, explained their significance in the debate on the floor of the House:

> For years and years we have been creating corporations, giving them power to incur indebtedness on behalf of the Government and authorizing the Treasury Department to transfer money to them. . . . The idea is that the Bureau of the Budget and the Congress at the beginning of each year should have a look at the total indebtedness to be created during ensuing fiscal year [sic] by these independent corporations, so that we can weigh that with the indebtedness we create by virtue of our appropriation bills for such fiscal year.

---

[14] The governing statute for the Federal Home Loan Banks expressly requires that "all obligations of Federal Home Loan Banks shall plainly state that such obligations are not obligations of the United States and are not guaranteed by the United States." 12 U.S.C. § 1435.

[15] Congress stressed that mere changes in terminology and style resulting from the 1982 enactment of Title 31 into positive law should not be interpreted as intended to make any substantive change in the law. *See* H.R. Rep. No. 651, 97th Cong., 2d Sess. 3 (1982).

96 Cong. Rec. 6725 (1950) (remarks of Rep. Norrell).[16] Should there remain any doubt that Congress intended all funds of government corporations, including nonadministrative funds, to be subject to apportionment, the section-by-section analysis in the legislative record removes any ambiguities:

> The first part of this provision [which enacted 31 U.S.C. § 665(c)] relates to the so-called no-year appropriations and to funds, such as funds used by corporations for purposes other than administrative expenses which are available indefinitely and without relation to any particular fiscal year. . . .
>
> · It is necessary that no-year appropriations and funds (including all funds of corporations, whether for administrative expenses or for other purposes) and contract authorizations be included in the apportionment system and be controlled to the extent necessary to insure efficiency and economy in carrying out the purpose for which such appropriations and authorizations are granted by the Congress.

96 Cong. Rec. 6836 (1950) (remarks of Rep. Norrell).

In hearings before the Senate it was again emphasized that, whereas the proposals of the Bureau of the Budget and GAO provided for apportionment only of corporate funds available for *administrative* expenses, the House bill, which after minor amendments was enacted as the Act of Sept. 6, 1950, provided for apportionment of *all* corporate funds. *See* General Provisions, General Appropriations Act, 1951, *Hearings on H.R. 7786 before the Senate Comm. on Appropriations*, 81st Cong., 2d Sess. 3 (1950) (statement of Frederick J. Lawton, Director, Bureau of the Budget) (Hearings). Moreover, the Hearings clarified that the specific exemption for corporations which obtain funds for making loans without legal liability on the part of the United States applied to the Central Bank for Cooperatives, the Regional Bank for Cooperatives, the Federal Home Loan Bank, and the Federal Intermediate Credit Corporation. *Id.* at 6. Understandably, the FSLIC was not mentioned.

Therefore, the legislative history of the Antideficiency Act clearly indicates that Congress intended all funds — including nonadministrative funds — of the FSLIC to be subject to apportionment.

## C. Countervailing Considerations

In light of the clear language and fully consistent legislative history of the Antideficiency Act, the contention that the FSLIC's organic act exempts FSLIC

---

[16] Another Congressman was assured that

> what is sought to be accomplished by one provision of this rule is to give the Committee on Appropriations and the Congress the opportunity to look at the operation of these Government corporations that do not operate on direct appropriations, but which are given the authority to transfer their bonds directly to the Treasury and thus secure the money to carry on their operation without any look or supervision so far as the Congress is concerned at the expenditure of those funds. . . .

96 Cong. Rec. 6728 (1950) (remarks of Rep. Keefe)

nonadministrative funds from the apportionment requirement is not persuasive. We recognize, of course, the importance of the doctrine of *in pari materia*, namely, that "where there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one, regardless of the priority of enactment." *Radzanower* v. *Touche Ross & Co.*, 426 U.S. 148, 153 (1976) (citing *Morton* v. *Mancari*, 417 U.S. 535, 550–51 (1974)). However, we are convinced neither that the FSLIC's exempting provision in 12 U.S.C. § 1725(c)(5) functions as a "specific" statute nor that the applicable Antideficiency Act provisions, 31 U.S.C. §§ 1511–1519, operate as "general" provisions. To the contrary, 12 U.S.C. § 1725(c)(5) does not specifically exempt FSLIC funds from apportionment requirements; rather, it generally insulates the necessary expenditures of the FSLIC from the provisions of other laws governing the expenditures of public funds. On the other hand, the Antideficiency Act was amended expressly to apply to all funds, specifically including those of all wholly or partly owned government corporations and explicitly exempting only those of corporations that make loans without legal liability on the part of the United States.

Concededly, a related rule, that "repeals by implication are not favored," *Posadas* v. *National City Bank*, 296 U.S. 497, 503 (1936), applies with special force when the allegedly repealing measure is a provision in an appropriations bill, as is the case with the 1950 amendments to the Antideficiency Act. *See TVA* v. *Hill*, 437 U.S. 153, 190 (1978). Nevertheless, when Congress desires to alter or repeal an existing statutory provision, "there can be no doubt that . . . it could accomplish its purpose by an amendment to an appropriation bill, or otherwise." *United States* v. *Dickerson*, 310 U.S. 554, 555 (1940) (*quoted in United States* v. *Will*, 449 U.S. 200, 222 (1980)). The question is entirely one of congressional intent as expressed in the statutes. *See United States* v. *Mitchell*, 109 U.S. 146, 150 (1883).

Here, the enactment of the relevant 1950 Antideficiency Act amendments as one title in a general appropriations act is not dispositive. As indicated in the legislative history set forth above, Congress specifically intended the Antideficiency Act provisions to apply to an extremely broad definition of funds, including the nonadministrative funds of independent corporations. *Cf. TVA* v. *Hill*, 437 U.S. at 189 & n.35 (appropriations for Tellico Dam did not implicitly repeal provisions of Endangered Species Act because appropriations did not identify the projects for which the sums had been intended and Tellico Dam funds represented relatively minor component of a lump sum amount). The Senate held hearings that expressly addressed the matter of extending the Antideficiency Act provisions to encompass the funds of independent corporations. *See* Hearings, *supra*, at 3–14. Both Houses considered whether the amendments might effectively limit or be construed to limit the powers and duties of independent agencies. *See* 96 Cong. Rec. 11780–86 (1950) (amendment of Sen. Johnson proposing to exempt certain appropriations for the Civil Aeronautics Board from requirements of proposed bill); 96 Cong. Rec. 6725–31 (1950) (remarks of Reps. Eberharter and Keefe) (fear that Antideficiency

32

Act amendments would negate corporations' enabling statutes). Congress in enacting the 1950 amendments clearly intended that the Antideficiency Act apply to funds of independent corporations.

Moreover, there is at best a minor distinction between the substantive legislation and the "appropriations" legislation in this particular instance. The provision in the FSLIC's substantive legislation, 12 U.S.C. § 1725(c)(5), is a minor amendment that was adopted during the course of other major revisions without extensive, if any, comment. The "appropriations" measure, however, was not simply an authorization for funding due to expire at the end of the year, but a permanent, substantial change in the budget procedure that attracted congressional attention and was the focus of much debate.

In addition, the arguments that apportionment is futile, insofar as the FSLIC may well encounter unanticipated expenses, and that the FSLIC's "fiduciary duties" to the private party insureds are incompatible with the normal budget process, are objections that Congress addressed to its satisfaction by providing for mandatory and permissive exemptions in the Antideficiency Act itself. At the time Congress was considering the 1950 amendments, independent agencies claimed that the revisions would interfere, even if unintentionally, with their existing statutory powers and duties. *See* 96 Cong. Rec. 11780–86 (1935) (offering amendment, on behalf of the Civil Aeronautics Board, to exempt appropriations for the transportation of mail from the Antideficiency Act). Similarly, Congress was concerned that the amendments might hamper the government's obligation to match the state's payments for social security or to meet comparable statutory entitlements. *See* 96 Cong. Rec. 6730–31 (1950) (remarks of Reps. Forand and Rabaut). Congress took care to clarify that the designated apportioning official could exempt from apportionment, *inter alia*, appropriations for expenditures which are paid in accordance with formulae prescribed by law. *See* 31 U.S.C. § 1516 (previously 31 U.S.C. § 665(f)); Hearings, *supra*, at 10, 18. Significant for present purposes is that Congress chose to resolve problems of flexibility and accommodation between budget oversight and corporate authority primarily by permissive exemptions rather than absolute exclusions from the Antideficiency Act.[17]

Furthermore, there is no evidence of any long-settled or congressionally ratified practice under 12 U.S.C. § 1725(c)(5) of holding the FSLIC exempt from all laws governing the expenditure of public funds. To the contrary, from the time of the First Deficiency Appropriation Act, Act of June 22, 1936, ch. 687, § 7, 49 Stat. 1597, 1647, which required that "notwithstanding any other provision of law," the FSLIC, among others, shall not "incur any obligations for administrative expenses, except pursuant to an annual appropriation specifically therefor," the FSLIC has submitted, and Congress has acted upon, annual estimates for the FSLIC's administrative expenses. Since 1945, the FSLIC has submitted annual estimates of its administrative expenses to Congress pursuant to the requirements of the Government Corporation Control

---

[17] As noted above, the FSLIC does not fall within the limited mandatory exemptions from the Act 31 U.S.C. § 1511(b). The permissive exemptions, however, may well apply to FSLIC funds.

33

Act, Act of Dec. 6, 1945, ch. 557, § 2, 59 Stat. 597 (codified at 31 U.S.C. §§ 9101 *et seq.*).[18] Although compliance with the above statutes may not, as a practical matter, affect the FSLIC's ability to determine its necessary expenses as it sees fit, the FSLIC has not refused to comply with these laws governing the expenditure of public funds or otherwise asserted that 12 U.S.C. § 1725(c)(5) confers a sufficient exemption from their application.

Unless the FSLIC is to argue that necessary expenses include nonadministrative expenses but not administrative expenses, its own past practices undermine its present position. Yet the statute itself — both on its face and in the legislative history — does not define necessary expenditures in terms of nonadministrative or administrative expenses. Absent a congressional determination that administrative expenses are somehow less necessary, we presume that Congress intended necessary expenditures to include both types of expenses. Just as it is ordinarily inferred that a statute "carries with it all means necessary and proper to carry out properly the purposes of the law," any administrative expenses incurred in the actions taken to prevent a default of insured institutions must be viewed as necessary expenditures necessary to effectuate the statutory obligations of the FSLIC. *United States* v. *Louisiana*, 265 F. Supp. 703, 708 (E.D. La. 1966) (three judge court), *aff'd*, 386 U.S. 270 (1967).

Of equal importance, in the 1950 revisions to the Antideficiency Act, Congress expressly declined to distinguish between administrative and nonadministrative expenses for purposes of that Act. If 12 U.S.C. § 1725(c)(5) does not insulate FSLIC administrative expenses from the requirements of the Act, then it cannot provide a basis for exempting nonadministrative expenses from the Antideficiency Act. Indeed, we presume that the distinction itself arose in the days when the Antideficiency Act applied to annual appropriations for the administrative expenses of corporations but not to indefinite or permanent funds. Although the distinction may continue to have some meaning in the context of other statutes, *see, e.g.*, 31 U.S.C. § 9104(a)(3), it has no significance in a statute that has abandoned any recognition of a difference between administrative and nonadministrative funds.

## D. Exercise of Apportionment Authority

Having determined that the nonadministrative funds of the FSLIC are subject to the apportionment requirements of the Antideficiency Act does not end the matter. A subsequent consideration, as you noted in your letter to us, is how that authority is to be exercised. At the time of the 1950 amendments, which brought all corporate funds within the coverage of the Antideficiency Act,

---

[18] 31 U.S.C. § 9104(a) empowers Congress to make appropriations authorized by law and to make corporate financial resources available for operating and administrative expenses. Admittedly, 31 U.S.C. § 9104(b) expressly accommodates the powers and duties of corporations to a greater extent than the Antideficiency Act, it states that its provisions do not "prevent a wholly owned Government corporation from carrying out or financing its activities as authorized under another law." Nevertheless, Congress' appropriations power necessarily restricts to some degree the discretion of the FSLIC to determine the manner in which expenditures will be made.

34

some members of Congress expressed concern that in adopting the amendments Congress "would negative every act . . . passed setting up these corporations . . . , would take control over every legislative committee on matters already passed on by the House, and in this appropriation bill forbid [these corporations] to obligate the Government contrary to the laws of Congress." 96 Cong. Rec. 6727 (1950) (remarks of Rep. Eberharter). In response, representatives knowledgeable about the proposed revisions offered assurances that the purpose of the amendments was simply to give the Appropriations Committee the authority "to check and be sure the fiscal policies of these corporations are such that they do not spend all the money Congress grants them in the first few months." 96 Cong. Rec. 6727 (1950) (remarks of Rep. Brown). Significantly, it was emphasized that "[i]f this authority is given, it does not mean that the Committee on Appropriations can change any basic law or activity which has been granted to the corporation." 96 Cong. Rec. 6728 (1950) (remarks of Rep. Keefe). Thus, in subjecting corporations to budgetary supervision, Congress did not intend to alter the duties and obligations of those corporations as set forth in their enabling acts.

We recognize that the power to authorize apportionments indicating a necessity for a deficiency and the power to make exemptions from apportionment are discretionary powers, resting in the President or the official having administrative control of an appropriation available to the legislative or judicial branch. *See* 31 U.S.C. §§ 1515, 1516. Moreover, we have not been specifically asked whether expenses incurred by the FSLIC pursuant to statutory authority to avert the default of an insured institution would constitute "an emergency involving ... the protection of property, or the immediate welfare of individuals," 31 U.S.C. § 1515(b)(1)(B), or whether the FSLIC's insurance assessments qualify as a "trust or working fund" which may be exempted from apportionment. *See id.* § 1516. We point out, though, that because the FSLIC is both authorized, in its discretion, to incur expenses to avoid the default of insured institutions and ultimately is obligated to make payment on each insured account in the event of a default by an insured institution, these statutory powers and obligations should be weighed appropriately in the apportionment process.

## Conclusion

Accordingly, we conclude that OMB, acting on behalf of the President, has the authority to apportion FSLIC nonadministrative funds. We express no opinion on how that authority should be exercised.

RALPH W. TARR
*Deputy Assistant Attorney General*
*Office of Legal Counsel*